UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:10-cr-303-T-23MAP
 8:12-cv-2391-T-23MAP

JULIO MEZA-SANCHEZ
_____/

### **O R D E R**

Meza-Sanchez's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction under 46 U.S.C. § 70503(a)(1) for conspiracy to possess with the intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, for which Meza-Sanchez is imprisoned for twenty-five years. Meza-Sanchez pleaded guilty under the terms of a plea agreement. The United States admits that the motion to vacate is timely (Doc. 9 at 3), but argues that the motion lacks merit.

### **FACTS**[1]

> In early June, 2010, defendants Aleman Antonio Daniel-Matos (Captain) and Julio Meza-Sanchez (Drug Representative) were hired by an individual in Colombia to smuggle 70 kilograms of cocaine aboard a fishing vessel (F/V). Thereafter, Daniel-Matos hired [a mechanic and two crew members] to assist in the cocaine smuggling venture. Each defendant knew he would be helping to smuggle cocaine and was paid to do so.

---

[1] This summary of the facts derives from the plea agreement. (Doc. 75).

> On or about June 9, 2010, [the captain and crew] left Santa Marta, Colombia, aboard the Colombian F/V *Pescamar I* en route to meet another vessel carrying the cocaine. On or about June 10, 2010, the captain and crew of the *Pescamar I* met a go-fast (GF) vessel which was carrying defendant Mesa-Sanchez and the 70 kilograms of cocaine. The cocaine was then transferred onto the *Pescamar I* and Meza-Sanchez also boarded the F/V. Ultimately, the cocaine was hidden in the fish hold area of the *Pescamar I*.
>
> On or about June 15, 2010, while the defendants were smuggling the cocaine aboard the *Pescamar I*, the United States Coast Guard (USCG) Cutter *Bear* came into contact with them operating in international waters of the Caribbean Sea located at 14.59 degrees North latitude, by 81.48 degrees West longitude, or approximately 70 nautical miles northeast of Cabo Gracias Dios, Honduras. A USCG team boarded the *Pescamar I* pursuant to the US-Colombian Bi-Lateral Agreement and, after conducting a space-accountability assessment of the F/V, determined that there was a portion of the vessel for which the space was unaccounted. On or about June 16, 2010, the boarding team drilled a hole into the fish hold area of the *Pescamar I* and, ultimately, found the 70 kilograms of cocaine hidden therein. The defendants were then arrested.
>
> Thereafter, representatives of the United States contacted the Government of Colombia regarding the seizure of the F/V *Pescamar I* to request permission for the United States to exercise its jurisdiction over the vessel and crew. On June 18, 2010, the Government of Colombia ceded jurisdiction over the matter to the United States and the crew members were then brought to the Middle District of Florida.

Contending that he was promised a twenty-year sentence, Meza-Sanchez alleges that his twenty-five-year sentence violates the terms of the plea agreement and that his counsel was ineffective for not objecting to the district court's imposing a

sentence that is contrary to the plea agreement.² The two claims are addressed together because both are refuted by the plea agreement.

### **INEFFECTIVE ASSISTANCE OF COUNSEL**

Meza-Sanchez claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

---

² An earlier order (Doc. 8) rejects Meza-Sanchez's attempt to amend his motion to vacate to include a challenge to the district court's jurisdiction based on *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012). At approximately 70 nautical miles northeast of Cabo Gracias Dios, Honduras, Meza-Sanchez's vessel was unquestionably in international water.

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Meza-Sanchez must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Meza-Sanchez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Meza-Sanchez cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## DISCUSSION

Meza-Sanchez fallaciously alleges that trial counsel rendered ineffective assistance by not objecting to the twenty-five-year sentence, which Meza-Sanchez claims breached the plea agreement's promise of a twenty-year sentence. However, Meza-Sanchez erroneously represents that his plea agreement promises a sentence of no more than twenty years and erroneously relies upon *United States v. Vallejo*, 463 Fed. App'x 849 (11th Cir. 2012), in which the district court (1) accepted a

Rule 11(c)(1)(C) plea agreement in which the parties agreed explicitly to a twenty-two-year sentence with no mention of supervised release but (2) sentenced the defendant to twenty-two years plus five years of supervised release.

First, unlike the plea agreement in *Vallejo*, Meza-Sanchez's plea agreement is not a Rule 11(c)(1)(C) plea agreement, which — if accepted by the court — binds the court to the stated sentence. Meza-Sanchez's plea agreement is a Rule 11(c)(1)(B) agreement (Doc. 75, ¶ 8), which does not bind the sentencing judge to a stated sentence. Paragraph 8 of Meza-Sanchez's plea agreement states explicitly:

> Pursuant to Fed. R. Crim. P. 11 (c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Second, *Vallejo* decides only that a Rule 11(c)(1)(C) plea agreement that fails to mention supervised release precludes the district judge's imposing a term of supervision.

According to the plea agreement, Meza-Sanchez's sentencing range was from twenty years to life imprisonment (Doc. 75 at 1) and, although the United States agreed to recommend a sentence of twenty years, the term of imprisonment remains within the district court's discretion, *i.e.*, "the United States will recommend to the

Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court . . . as adjusted by any departure the United States has agreed to recommend" (Doc. 75 at 3); "the United States will recommend to the Court that the defendant receive a sentence at the low end of the application guideline range" (Doc. 75 at 4); "[t]he defendant understands . . . [that] the sentence will be determined solely by the Court[, and that] any recommendations by the government are not binding on the Court." (Doc. 75 at 12)  During the plea colloquy Meza-Sanchez represented that he understood (1) that the "sentence at a minimum is to be twenty years in prison," (2) that "[t]he judge does not have to accept these recommendations," and (3) that "[i]f the judge does [not accept the recommendations], you will not be able to withdraw your plea of guilty." (Doc. 154 at 13–14)  Meza-Sanchez clearly understood that twenty years was the recommended sentence, not a promised sentence, and his present assertion to the contrary is unconvincing. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant . . . [at the plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.").

      Moreover, *Vallejo* provides Meza-Sanchez no support.  In *Vallejo* the imposition of a term of supervised release was beyond the explicit terms of the plea agreement, which stated "that the appropriate disposition was a sentence consisting

of 22 years' imprisonment and a $1 million fine," without mentioning the possibility of supervised release. Unlike *Vallejo*, Meza-Sanchez was not promised a specific sentence, only that the United States would recommend a sentence of twenty years.

Also, Meza-Sanchez fallaciously alleges that the United States violated the terms of the plea agreement (1) by not objecting to the twenty-five-year sentence and (2) by going to "great pains to highlight Petitioner's past transgressions with the law." First, as shown above, the United States had no basis for objecting to the sentence. Second, the United States fulfilled its promise to recommend a twenty-year sentence, notwithstanding the prosecutor's referencing Meza-Sanchez's "past transgressions."

The district court was well aware of Meza-Sanchez's criminal history. Defense counsel acknowledged that this offense was not Meza-Sanchez's first. "[U]nfortunately for Mr. Meza-Sanchez, this is not his first time. [A]nd I know that Your Honor could not be happy to see somebody before you that has been in this country previously on something — not cocaine, not that that makes it better, it was marijuana previously — had done time in this country, was deported from this country, and then somehow found his way back." (Doc. 150 at 5–6) Meza-Sanchez admitted that this offense was not his first. "And I'm sincerely sorry to once again be before a judge in the United States for an offense that I committed against it." (Doc. 150 at 10) Both Meza-Sanchez and his counsel admitted to having reviewed the presentence report and offered no objection to the factual accuracy, which report recounts Meza-Sanchez's extensive criminal history. (Doc. 150 at 4) Placed in the

proper context, the prosecutor's referencing Meza-Sanchez's "past transgressions" was not to subvert the recommendation for a twenty-year sentence, but to explain why the United States filed no motion for a reduced sentence based on Meza-Sanchez's substantial assistance (Doc. 150 at 10–12):

> Judge, you did correctly note that there is no motion from the Government, but I want the record to reflect that we did consider the substantial assistance of this Defendant and we provided that consideration up front. In other words, in the plea agreement, at paragraph 11, we delineate his cooperation and what the United States did in return, and that's also reflected in the presentence report at paragraph 85, Judge.
>
> The fact is that this Defendant was, as I noted earlier, not involved with the other Defendants when they left the port on the fishing vessel. This Defendant had acted with the captain in concert earlier and then met up with the Defendants out on a boat with the cocaine.
>
> Mr. Meza-Sanchez, at the time, was truthful with us, he cooperated, he told us everything he could, but he certainly couldn't tell us what had happened earlier in time up until his meeting-up with the boat. [H]owever, he has received from the United States a huge benefit for his substantial assistance by virtue of his non-objection to the presentence report. He admits his prior drug dealing offenses that qualify under the 851 enhancement that we filed in this case.
>
> And, Judge, he's not here the first time, second time, third time, he's here the fourth time. And he had more than the requisite number of prior drug offenses, marijuana or not, to be facing a life minimum sentence in this case. So I just want the record to reflect we do recommend the 240 months, Judge, but he was looking at the rest of his life in a Federal penitentiary after having spent three other stints in a Federal penitentiary on other occasions.
>
> . . . .
>
> My argument or my response was that we recommend the 240, but I wanted the record to be clear, Judge, that he did receive a

> benefit. He did cooperate and he did receive a benefit for his substantial assistance.

Meza-Sanchez's claim that the United States violated the terms of the plea agreement lacks merit.

Before pronouncing sentence the district court recounted Meza-Sanchez's "past transgressions" and explained why a twenty-year sentence was inadequate (Doc. 150 at 14–15):

> I was immensely unhappy when I saw this 1983 arrest. Defendant is on board a fishing vessel coming into Key West, 30,000 pounds of marijuana, 24 months of custody. You can tell that was a long time ago, can't you?
>
> And undeterred by that, in 1985 the Defendant comes cruising into Jupiter Inlet aboard one of those Scarab sport vessels, which create so much trouble, with a mere 3,000 pounds of marijuana, more or less. Got eight years there, unaccountably paroled.
>
> [T]his Defendant was paroled looks like about three years before the end of the term that he was given by Judge Gonzalez in the Southern District. They should have listened to Judge Gonzalez.
>
> [I]n 2000 we were aboard a vessel with 4,000 pounds of marijuana, more or less, Defendant using an alias. It is far from clear to me why that offense resulted in a 46-month sentence when the eight-year sentence of a few years earlier proved inadequate. That's wholly unaccountable to me, but I will assume it was well informed.
>
> Honestly, Mr. Meza-Sanchez, I think the only question here is how much sentence it takes to disable you from doing this again during your present life. I have no intention of asking any Coast Guard or Naval personnel or law enforcement people to arrest you again for this foolishness. I would be perfectly content to disable you until I think you are just too old to do it. You are apparently too stubborn not to, or too rambunctious not to, [or] too aggressive not to. But this just won't do. You are

> apparently a stern or tough enough guy that prison time doesn't mean much to you. Even though you are more or less 50 years old, soon will be 50 years old, you should have known better and you have elected to persist beyond — well, beyond my ability to understand — so my resolve here, very candidly, is to keep you in custody until you are 70 or beyond, [you are not going to] do this anymore.

After imposing a twenty-five year sentence, the district court ensured that the record further discloses why a twenty-year sentence was inadequate (Doc. 150 at 16–18):

> This Defendant is apparently a bold and adventurous and persistent and committed importer of protected substances into the United States. Frankly, it's not mine to speculate or at this point even to care much why, but he's beyond — it is beyond any need for any further tolerance of the behavior. So . . . my sentencing objective, as I said, is to disable him from any further episode of this until he is I think sufficiently aged that he won't be an able-bodied seaman, let's put it that way.
>
> The characteristics of the offense, of course, are yet another example of someone making their seamanship and their energy and their skill and their determination available to an international criminal enterprise that engages in the richly economically rewarding business of importing into the United States high-grade cocaine to the detriment of the community. In other words, this is an offender who has an aggravated criminal history . . . and appears committed to recidivism and resilient over and against our attempts to deter him and he has committed an offense exactly in that category similar to those that he has committed earlier.
>
> He is due, I think in this instance, a more or less disabling penalty and my purpose here is to see to it that he actually serves more than 20 years, into his seventies, to deter others who would undertake his path and to protect the public from any further crimes by him, I'm almost tempted to say, and to protect law enforcement and others from the dangers inherent in having to track him down yet again and haul him in yet again and the like.

> I'll also say it's sad and tragic and in many respects unfortunate that this level of disability has proven necessary . . . . So I think duty requires that he reside here until he can no longer effectively commit this offense of conviction.

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The clerk must enter a judgment against Meza-Sanchez and close this case.

### DENIAL OF BOTH
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Meza-Sanchez is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Meza-Sanchez must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Meza-Sanchez is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Meza-Sanchez must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on January 12, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE